UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MICHELE S., :
      Plaintiff, :
 :
v. : C.A. No. 19-65WES
 :
ANDREW M. SAUL, :
COMMISSIONER OF SOCIAL SECURITY, :
      Defendant. :

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

    In June 2016, Plaintiff Michele S., then aged forty-three, stopped working as a certified nursing assistant because of what her treating physicians have labeled as mild to moderate pain in the lumbar spine and right hip that caused antalgic gait, a mix of positive and negative straight-leg-raise observations, occasional right leg weakness and hunched posture. Yet, her MRIs and X-rays consistently produced largely unremarkable readings, surgery was never recommended, and virtually all treating providers prescribed analgesics, occasional muscle relaxants and injections, recommended physical therapy, strengthening and exercise and (to the extent that work was mentioned) suggested that she could return in a relatively short period of time. Based on these (and other)[1] impairments, on November 28, 2016, Plaintiff applied for Disability Insurance Benefits ("DIB") under 42 U.S.C. § 405(g) of the Social Security Act (the "Act"). In her application, she alleged onset of disability on June 30, 2016, with a date-last-insured of December 31, 2018.

    After her claims were denied twice at the administrative phase, Plaintiff's case proceeded to hearing before an Administrative Law Judge ("ALJ"). Affording great evidentiary weight to

---

[1] Plaintiff's other medical concerns are not in issue now and will not be discussed in this report and recommendation.

the opinions signed in January and May 2017 by two state agency medical consultants, Drs. Joseph Callaghan and Mitchell Pressman, and only modest evidentiary weight to the August 2017 opinion signed by Plaintiff's primary care physician, Dr. Teresita Hamilton, the ALJ acknowledged that Plaintiff's lumber spine and hip pain were severe impairments, but found that she nevertheless retained the residual functional capacity ("RFC")[2] to work at the light exertional level with additional limitations, including no more than four hours of standing and walking, the need for alternate sit/stand (at thirty-minute intervals) opportunities and postural limits. Based on this RFC and the testimony of a vocational expert, the ALJ concluded that Plaintiff could do her prior semi-skilled work as a claims consultant and administrative clerk.[3] Therefore, she was not disabled at any time from her date of alleged onset through the date of the decision.

Plaintiff now moves to reverse the Commissioner's decision denying her DIB application. She contends that the ALJ erred in discounting Dr. Hamilton's opinion and in affording great evidentiary weight to those of Drs. Callaghan and Pressman. She also charges that the ALJ improperly performed a lay interpretation of the medical record, including the crafting of his own diagnosis. Defendant Andrew M. Saul ("Defendant") has filed a motion for an order affirming. The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the record, I find that the ALJ's findings are sufficiently supported by substantial evidence. Accordingly, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 8) be

---

[2] Residual functional capacity or RFC is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

[3] In reliance on the testimony of the vocational expert, the ALJ alternatively found that Plaintiff could perform certain unskilled light jobs available in the national economy.

DENIED and Defendant's Motion to Affirm the Commissioner's Decision (ECF No. 11) be GRANTED.

I. **Background**

The pertinent medical history begins with Plaintiff's fall down six stairs in mid-June 2016. At the Miriam Hospital emergency department, X-rays of her left hip and lumbar spine were entirely normal and she was advised that, if she could not return to work on Monday, she should see her primary care physician. Tr. 259-61. On June 13, 2016, Plaintiff went to Dr. Hamilton, whom she had not seen since 2014; Dr. Hamilton found moderate-severe pain, limping and limited motion associated with the left hip and recommended that she stay out of work for one week. Tr. 355-59.

Two weeks later, on June 30, 2016, (the alleged onset date), Plaintiff returned to Dr. Hamilton, this time complaining of pain in the lumbar spine and right hip; the left hip was "OK." Tr. 351. On examination, Dr. Hamilton noted posterior tenderness, bilateral lumbosacral paravertebral muscle spasm, moderate pain with motion, slow, hunched-over gait, but negative straight leg raise. She assessed low back pain, possibly associated with radiculopathy and prescribed an analgesic and a muscle relaxant, as well as physical therapy. Tr. 353. However, the lumbar spine X-ray performed in July 2016 revealed only mild lumbar spine spondylosis. Tr. 415. One of Dr. Hamilton's colleagues noted antalgic gait in July 2016, and recommended stretching, strengthening, analgesics and ice; he suggested that Plaintiff "[t]ry [a] back brace or abdominal girdle for support, especially on return to work." Tr. 349. Despite observations by medical professionals of "moderate" pain, Plaintiff's subjective description of pain during June and July 2016, was between eight and nine on the one-to-ten scale. Tr. 280, 349.

In August and September 2016, Plaintiff saw Dr. Hamilton twice; her examinations resulted in findings of mild to moderate pain, muscle spasm, antalgic gait, hunched posture, reduced right hip flexor strength, and a positive straight leg raise. Tr. 341. At the same appointment at which Dr. Hamilton observed "mild pain w/ motion," Plaintiff's subjective assessment was that her pain was nine out of ten. Tr. 318. Dr. Hamilton opined that Plaintiff should be able to return to work soon, Tr. 341 ("[R]emains out of work for one more week. If she is not doing well then she may call to extend . . . ."), and recommended analgesics and ice, Tr. 339. The September 13, 2016, MRI was largely normal; consistent with the July X-ray, it showed only degenerative disc disease with no central canal narrowing and no frank disc herniation.[4] Tr. 307-08. Dr. Hamilton sent Plaintiff to Dr. Susan Walker, of the Memorial Hospital Pain Clinic, who diagnosed right sacroiliitis and administered the first of two injections in November 2016. Tr. 309. Plaintiff's last appointment with Dr. Hamilton in 2016 was on December 15, at which Dr. Hamilton continued to find tenderness in the posterior, hip and lumbar spine, moderate pain with motion, but negative straight-leg-raise; this time, she recommended Plaintiff try a chiropractor. Tr. 313. The second injection was administered by Dr. Walker two months later, on February 28, 2018. Tr. 295.

Also in August 2016, Plaintiff attended an appointment with one of Dr. Hamilton's colleagues for mental health counseling. Tr. 331. By contrast with her statements to the ALJ during the hearing, Plaintiff told the counselor that she "spends her day cleaning to keep busy and tends to the house and kids," that she drives her mother to where she needs to go, that she is on call to provide assistance "infrequently" to her mother-in-law, and that she had been caring for her father, who was in hospice. Tr. 332-33. With respect to work, she told the counselor she

---

[4] This MRI is summarized by various physicians as essentially normal. E.g., Tr. 401 ("essentially normal with only a mild dis[c] bulge"), Tr. 424 ("essentially normal . . . mild disc protrusion").

4

"wants to get back to work." Tr. 335. Several months later, in January 2017, Plaintiff was seen by a urologist, Dr. Harisaran. Tr. 368. Dr. Harisaran recorded observations of normal gait and station, with "Back: no CVA tenderness." Id.

Plaintiff saw Dr. Hamilton one final time, on March 13, 2017, before Dr. Hamilton signed the August 4, 2017, opinion in support of Plaintiff's DIB application. Tr. 379. At that appointment, Dr. Hamilton noted that the injections had been "somewhat helpful but still with pains [in] lower back R>L into R hip area." Id. Physical examination continued to show lumbar spine tenderness, weak right hip muscle, but only mild pain with motion of the spine and hip, despite Plaintiff's subjective complaint that the pain was eight out of ten. Tr. 382. Dr. Hamilton recommended physical therapy, exercise and stretching, but not medication, except to assist with smoking cessation. Tr. 383.

In May 2017, Plaintiff's DIB claim was denied for the second time administratively; in June 2017, she asked for a hearing before an ALJ. Tr. 120

Beginning soon after DIB reconsideration was denied, Plaintiff sought care from several different providers. For example, in July and August 2017, she saw Drs. David J. Cicerchia and Jack Goldstein, orthopedic surgeons at Blackstone Orthopedic. Tr. 423-25. Their examinations resulted in the findings of no spinal tenderness, range of motion intact, normal spinal MRI, and mild hip and lumbar symptoms. Tr. 423-26. Dr. Cicerchia opined that "no findings warrant surgical intervention" and recommended increased activity with strengthening of the core. Tr. 426, 428. Also in July 2017, Plaintiff started treating several times a week with a chiropractor, Dr. Rodger Lincoln. Tr. 438. Dr. Lincoln's intake observations echo those of Dr. Hamilton (antalgic gait, hip and lumbar pain with spasm), but by September 2017, Dr. Lincoln noted that the back and sciatic pain was gone and hip pain had become an ache. However, after Plaintiff

stopped going for eight weeks, when she returned in late November 2017, she had relapsed. Tr. 470. And at the very end of 2017, Plaintiff initiated treatment with another orthopedist, Dr. Roy Aaron. Tr. 491. Dr. Aaron was initially concerned by findings of sciatic pain and right-side weakness and ordered a new MRI; while waiting for it, he prescribed Percocet and recommended that Plaintiff lay down. Tr. 489. However, the MRI (dated January 19, 2018) depicted the same mild spondylosis observed in earlier imaging. Tr. 493. Noting that the MRI was negative, as were the hip films, and that the straight leg raise test was only "borderline positive," Dr. Aaron made findings on examination similar to those of Dr. Hamilton from 2016 (tender over hip trochanter, sciatic pain, weakness and pain with motion) and referred Plaintiff to the spine center for "further evaluation of possible lumbar radiculopathy." Tr. 487. There is no reference to continuation of Percocet or of the recommendation that Plaintiff remain supine.

On August 4, 2017, Dr. Hamilton signed her RFC opinion in support of Plaintiff's DIB application. Tr. 430. By contrast with her treating notes that reflect findings of mild to moderate pain, her opinion states that Plaintiff has "extreme pain." Tr. 433. In reliance on her own findings of lumbar tenderness and paravertebral muscle spasm, she opined that Plaintiff could sit or stand for no more than fifteen minutes at a time and could sit/stand/walk for less than two hours in a workday. Tr. 431. She cabined her opinion that Plaintiff would require unscheduled breaks as "per patient's report." Id. Dr. Hamilton noted that Plaintiff's condition causes her to have "'good days' and 'bad days,'" as well as that she would require work that permits shifting positions at will from sitting, standing or walking. Tr. 431, 433.

Three weeks later, Dr. Hamilton saw Plaintiff again (on August 28, 2017); the findings made at this appointment clash with the August 2017 opinion. For example, Dr. Hamilton found that Plaintiff's level of distress was only "uncomfortable," that she was finding the chiropractor

6

"helpful especially for back," and continued analgesics for pain. Tr. 434-36. Most notably, she recorded, "reports neck and back areas are a lot better[] return to work." Tr. 434.

Also in contrast to Dr. Hamilton's opinion are the observations made by the ALJ at the hearing held six months later. During his examination, he questioned Plaintiff, who confirmed that she had been able to sit and/or stand for two hours and fifteen minutes while waiting for the hearing to begin and during the hearing itself. Tr. 72.

## II. <u>Standard of Review</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. <u>Ortiz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); <u>Rodriguez v. Sec'y of Health & Human Servs.</u>, 647 F.2d 218, 222 (1st Cir. 1981); <u>Brown v. Apfel</u>, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. <u>Rodriguez Pagan v. Sec'y of Health & Human Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987); <u>see also</u> <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991); <u>Lizotte v. Sec'y of Health & Human Servs.</u>, 654 F.2d 127, 128 (1st Cir. 1981). The determination of substantiality is based upon an evaluation of the record as a whole. <u>Brown</u>, 71 F. Supp. 2d at 30; <u>see also</u> <u>Frustaglia v. Sec'y of Health & Human Servs.</u>, 829 F.2d 192, 195 (1st Cir. 1987); <u>Parker v. Bowen</u>, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. <u>Brown</u>, 71 F. Supp. 2d at 30. The Court does

not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g). Allen v. Colvin, No. CA 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015) (citing Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir.1996)).

## III. Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A. The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R.

Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R. § 404.1520(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims). The claimant must prove the existence of a disability on or before the last day of insured status for the purposes of disability benefits. Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982); 42 U.S.C. §§ 416(i)(3), 423(a), 423(c).

### B.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there are good reasons to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(c). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. Konuch v. Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. § 404.1527(c)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988). The ALJ's decision must articulate the weight given, providing "good reasons" for the determination. See Sargent v. Astrue, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012) (where

ALJ failed to point to evidence to support weight accorded treating source opinion, court will not speculate and try to glean from the record; remand so that ALJ can explicitly set forth findings).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). A treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2). If a treating source is not accorded controlling weight, the ALJ must apply the factors listed in 20 C.F.R. § 404.1527(c). As SSR 96-2p provides:

> The notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188 (July 2, 1996). The regulations confirm that, "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(c)(2). However, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

### IV.    Analysis

Plaintiff argues that the ALJ erred in three respects: first, by essentially dismissing Dr. Hamilton's treating source opinion; second, by assigning outsized weight to the state agency

non-examining experts, Drs. Callaghan and Pressman; and, third, by relying on his own lay opinion to support the finding that Plaintiff's pain seems to wax and wane.

### A. Hamilton Treating Source Opinion

In accordance with 20 C.F.R. § 404.1527(c), the ALJ's detailed analysis of the Hamilton opinion boils down to one sustainable "good reason" for the modest weight it was afforded – the inconsistency between its conclusions and the balance of the treating record, particularly the clinical observations and treatment recommendations in Dr. Hamilton's own notes. Tr. 25 ("The clinical signs documented in [Dr. Hamilton's] examinations do not support her conclusions."). To reach this finding, the ALJ contrasted the Hamilton opinion's extreme findings with the treatment Dr. Hamilton herself provided and the clinical observations Dr. Hamilton herself recorded. Compare Tr. 20-21, 23 (ALJ's detailed analysis of Hamilton notes, including clinical signs and recommended treatment), with Tr. 25 (ALJ's detailed analysis of Hamilton opinion). For example, during the period preceding the signing of her opinion, when Dr. Hamilton was actively involved with Plaintiff (June 2016 to March 2017), for pain, she prescribed anti-inflammatory medication (and occasionally a muscle relaxant), while for treatment, she recommended physical therapy, stretching and strengthening – this conservative treatment contrasts with her opinion that Plaintiff cannot sit, stand or walk for more than fifteen minutes at a time or for a total of two hours over the course of a work day. Similarly, there is a material discrepancy between Dr. Hamilton's treating notes reflecting "mild pain" in September 2016 and March 2017, and "moderate" pain in December 2016, Tr. 311, 318, 382, and Dr. Hamilton's opinion that Plaintiff has "extreme pain." Tr. 433.

Plaintiff critiques this "good reason," arguing that the ALJ's labelling of Dr. Hamilton's approach as "conservative treatment" amounts to the ALJ injecting his "own lay opinion" into

11

the analysis. This attack is unavailing. The case law reflects that courts readily accept a common sense finding that treatment analogous to that provided by Dr. Hamilton may be summarized as "conservative" without requiring a medical opinion to support the conclusion. See Garay v. Berryhill, Case No. 3:16-cv-30122-KAR, 2017 WL 4238861, at *10 (D. Mass. Sept. 25, 2017) ("[W]hen Plaintiff was evaluated . . . the plan was for conservative management, including physical therapy, pain medication, and possible epidural injections."); Sherry v. Berryhill, C.A. No. 16-157S, 2017 WL 3278957, at *7 (D.R.I. June 12, 2017) (no error in ALJ's rejection of treating podiatrist's opinions based in part on opinions' inconsistency with claimant's "conservative treatment"), adopted, 2017 WL 3278866 (Aug. 1, 2017); cf. Campos v. Colvin, No. CA 13-216 ML, 2014 WL 2453358, at *15 (D.R.I. June 2, 2014) (use of only Tylenol and ibuprofen for pain supported ALJ's decision that back pain was not severe impairment). In any event, the ALJ here relied on the analysis of state agency experts who noted conservative nature of the treatment, for example, Dr. Hamilton's prescription of nothing stronger than "Ibup[ro]fen." E.g., Tr. 436. Further, Dr. Hamilton's post-opinion treating notes (from an appointment on August 28, 2017, only three weeks later) supply additional support for the ALJ's "good reason": they reflect improvement in clinical signs, the prescription only of analgesic medication and mention Plaintiff's "return to work." Like Dr. Hamilton's earlier notes, these clash markedly with Dr. Hamilton's virtually contemporaneous August 2017 opinion.

Plaintiff also counters that Dr. Hamilton's opinion should have been afforded more weight because, as Plaintiff's primary care provider, she was sent copies of treating records by other treating sources. Plaintiff is right that Dr. Hamilton had access to most of the treating record. The problem is that this evidence – the normal hip and spine X-rays done at Miriam

12

Hospital, the relatively benign lumbar MRI done in September 2016,[5] the opinion of one of Dr. Hamilton's colleagues that Plaintiff could try a back brace or girdle on her return to work, the observations of the urologist, Dr. Harisaran, of normal gait and lack of "CVA tenderness," Dr. Walker's observations of normal strength, good range of motion and negative straight leg raise and Plaintiff's description to the mental health counselor of her many activities (cleaning, caring for "kids," driving her mother, caring for her father and responding to calls from her mother-in-law) – is entirely inconsistent with the Hamilton opinion. This evidence supplies further support for the ALJ's determination to afford the Hamilton opinion only modest weight.

A final point worthy of mention regarding the ALJ's treatment of the Hamilton opinion is that he did not entirely reject it. To the contrary, the ALJ afforded it "modest" weight and found it "persuasive in finding that the claimant's clinical abnormalities limit her functioning to some degree," resulting in an RFC permitting only light work with additional limitations. Tr. 25. Further, Dr. Hamilton's opinion includes Plaintiff's need for a sit/stand option during the workday. Tr. 431. The ALJ incorporated an analogous limitation into his RFC. Tr. 18.

Because there is substantial evidence supporting his decision, I find no error in the ALJ's approach to the Hamilton opinion.[6] See Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018)

---

[5] All of the X-rays and MRIs in the medical record are consistent with each other and inconsistent with the Hamilton opinion. Tr. 259-60, 307, 415, 493; see Gobis v. Colvin, Civil No. 15-cv-268-SM, 2016 WL 4257546, at *4 (D.N.H. Aug. 12, 2016) (treating physician's opinion that claimant had disabling limitations contradicted by lumbar MRI showing mild disc changes and "no significant central canal foraminal stenosis" and "no nerve compression"); Westhaver v. Astrue, Civil Action No. 09-12032-DPW, 2011 WL 3813249, at *10 (D. Mass. Aug. 26, 2011) (treating physician's opinion that claimant had disabling limitations contradicted by lumbar MRI showing mild to moderate disc herniation).

[6] Less compelling is the ALJ's focus on the limited nature of Dr. Hamilton's contact with Plaintiff in the eight-month period preceding the signing of her August 4, 2017, opinion. While the ALJ is correct that the Hamilton opinion rests only on the intensive period of treatment (six appointments) over six months in 2016, and one isolated encounter in March 2017, and that the length of the treating relationship is an appropriate consideration, 20 C.F.R. § 404.1527(c)(2)(i), he does not explain why the Hamilton opinion is less reliable in light of this paucity of contact in 2017, before it was signed. See Johnson v. Astrue, 597 F.3d 409, 411 (1st Cir. 2009) ("ALJ here offered *no* explanation for, or citation in support of, her belief that Dr. Ali's treatment relationship with claimant had been too

13

(Souter, J.) ("Quite simply, Dr. Kessler's medical records of treating Purdy were at odds with his conclusions purporting to support Purdy's application.").

B.   **State Agency Opinions**

Plaintiff's attack on the ALJ's decision to afford "great evidentiary weight" to the opinions of Drs. Callaghan and Pressman, the non-examining state agency physician consultants at the initial and reconsideration levels, is similarly flawed. Her argument that the ALJ lacked evidentiary support for the finding that these "consultants are designated by the Commissioner, and have extensive knowledge of the Social Security programs [sic] and its regulations," Pl.'s Mem. at 15 (citing Tr. 25), ignores 20 C.F.R. § 404.1513a(b)(1), which provides that state agency physicians are "highly qualified and experts in Social Security disability evaluation." See Kandzerski v. Colvin, C.A. No. 15-401ML, 2016 WL 7632863, at *6 (D.R.I. Dec. 9, 2016), adopted, 2016 WL 7632863 (Dec. 9, 2016). More substantively, Plaintiff argues that the file review of Drs. Callaghan and Pressman occurred before the treating record was complete; although she highlights no specific evidence, she contends that this deficit leaves their opinions lacking the support of substantial evidence. In effect, Plaintiff asks the Court to adopt a *per se* rule that the opinion of a non-examining source who reviews less than the full record must always be discounted and afforded less weight. This proposition clashes with the well-settled principle that a non-examining assessment may be credited as substantial evidence despite the examiner's access to less than the full record, as long as the ALJ finds no material worsening in the claimant's status. Dianne D. v. Berryhill, C.A. No. 18-312JJM, 2019 WL 2521840, at *7 (D.R.I. June 19, 2019), adopted, C.A. No. 18-312JJM (D.R.I. July 5, 2019) (citing Anderson v. Astrue, No. 1:11-cv-476-DBH, 2012 WL 5256294 (D. Me. Sept. 27, 2012), adopted, 2012 WL

---

abbreviated to enable him to offer an informed opinion about claimant's physical capabilities."). This does not hold up as a "good reason."

5252259 (D. Me. Oct. 23, 2012), aff'd, No. 13-1001 (1st Cir. Jun. 7, 2013)). To hold otherwise ignores the reality that every non-examining or consulting source deployed to opine during the administrative review of applications necessarily provides an opinion at a stage when the medical record is still developing. Sanford v. Astrue, No. CA 07-183 M, 2009 WL 866845, at *8 (D.R.I. Mar. 30, 2009) ("to render a state agency physician's opinion irrelevant merely because [he] was not privy to updated medical records would defy logic and be a formula for paralysis") (citing Kendrick v. Shalala, 998 F.2d 455, 456-57 (7th Cir. 1993) (no record is ever "complete" as a claimant may always obtain another medical examination)).

As to the merits of the argument, Plaintiff is simply wrong to posit that the ALJ ignored the post-state agency review evidence. To the contrary, the ALJ carefully focused on Plaintiff's post-reconsideration-phase encounters with three orthopedic surgeons[7] and with a chiropractor.[8] His decision contains a lengthy discussion of each, Tr. 22-23, focusing on their clinical observations. This analysis accurately concludes that these are either consistent with Dr. Hamilton's treating notes (and the balance of the pre-reconsideration record) or more benign. E.g., Tr. 423-28 (Drs. Cicerchia and Goldstein find "mild pain" and "mild radicular symptoms," with "no findings to warrant surgical intervention" and recommendation to "increase activity with core strengthening"); Tr. 484 (Dr. Lincoln notes "her lower back is less painful and pain in her right hip and right bursa is not as sharp or burning"); Tr. 493 (Dr. Aaron's new MRI shows only "mild spondylosis"). That is, none of this evidence establishes the requisite worsening of Plaintiff's condition after the file review by Dr. Pressman was complete. To the contrary, the ALJ's analysis of this evidence supports his finding that his RFC is consistent with "the record as

---

[7] These are Drs. Cicerchia and Goldstein of Blackstone Orthopedics and Dr. Aaron of University Orthopedics.

[8] This is Dr. Rodger Lincoln.

15

a whole." Tr. 25. The post-reconsideration evidence does not undermine the Callaghan/Pressman opinions. See Preston v. Colvin, Civil No. 2:13-CV-321-DBH, 2014 WL 5410290, at *2 (D. Me. Oct. 21, 2014) ("When the medical evidence postdating state-agency reviewers' reports is essentially cumulative, an administrative law judge's reliance on those reports is not error."). Accordingly, the ALJ's reliance on them leaves his RFC adequately supported by substantial evidence.[9] See Palmisciano v. Astrue, No. CA 07-216 M, 2009 WL 890927, at *5 (D.R.I. Mar. 31, 2009) (where post-file review evidence indicates continuation, not worsening, of seizure disorder, no error for ALJ to rely on state agency physician opinion).

Plaintiff's last argument is focused on the ALJ's finding that the "claimant's pain seems to wax and wane and exacerbations or flare-ups may be associated with sporadic injury." Tr. 24. Without explaining why such an error (if error it be) had a material impact on the outcome of the case, she contends that this amounts to a lay interpretation of the medical record. The problem is that this sentence is thoroughly grounded in the record. For starters, there is a medical opinion supporting it – Dr. Hamilton's opinion includes the finding that Plaintiff will have "'good days' and 'bad days.'" Tr. 433. Further, this statement is well supported by the many references in the record of Plaintiff's pain receding and then increasing with activity or injuries. E.g., Tr. 283 (Plaintiff seeks treatment after she "re-injured" her back while lifting); Tr. 393 (Plaintiff reports that pain had improved but then returned because she was a "very active person with frequent hiking and walking done on a regular basis"); Tr. 481 (Plaintiff returns to chiropractor after back

---

[9] Relatedly, Plaintiff criticizes the ALJ's observation that Drs. Callaghan and Pressman "provided extensive rationales to support their findings, citing to specific evidence of record and resolving inconsistencies in the record." Tr. 25. The ALJ was referring to their "additional explanation," which notes Plaintiff's relatively normal MRI, the benign X-rays, the multiple observations of antalgic gait, tenderness and paralumbar spasm, the mostly negative straight leg raises, the lack of response to physical therapy, and the consistent prescription of analgesics. Tr. 95, 107. While it may have been a trifle hyperbolic to label this as "extensive," the Callaghan/Pressman opinions are clearly grounded in and consistent with the medical record. This is not error.

16

pain gone and reports relapse). I find that the ALJ's statement about "wax[ing] and wan[ing]" is well supported by substantial evidence.

## V. Conclusion

Based on the foregoing analysis, I find that the ALJ's findings are sufficiently grounded in the substantial evidence of record and consistent with applicable law. Therefore, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 8) be DENIED and Defendant's Motion to Affirm the Commissioner's Decision (ECF No. 11) be GRANTED. Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 22, 2019